# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *CNA International, Inc. v. Baer*, 2012 IL App (1st) 112174

---

| | |
|---|---|
| Appellate Court Caption | CNA INTERNATIONAL, INC., and GOLD COAST DEVELOPMENT, LLC, Plaintiffs-Appellants, v. STEVEN H. BAER, RALLY CAPITAL SERVICES, LLC, and COLE TAYLOR BANK, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket Nos. 1-11-2174, 1-11-2893 cons. |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | October 4, 2012<br><br>November 5, 2012<br>November 21, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action by the developer and guarantors of a foreclosed condominium project against the receiver and mortgagee for damage to the property while it was in the receiver's control, the trial court properly dismissed plaintiffs' second amended complaint for failing to state a cause of action for negligence, and the trial court did not abuse its discretion in denying leave to file a third amended complaint, since the proposed amendment did not cure the deficiencies in the earlier complaint. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CH-17629; the Hon. Darryl B. Simko, Judge, presiding. |
| Judgment | No. 1-11-2174, Affirmed.<br>No. 1-11-2893, Affirmed. |

| Counsel on Appeal | Jin B. Kim and Michael W. Rathsack, both of Chicago, for appellants. |
| | |
| | Martin J. O'Hara, of Much Shelist, P.C., and Michael Resis and William Silas Hackney III, both of SmithAmundsen LLC, both of Chicago, for appellees. |
| | |
| Panel | JUSTICE EPSTEIN delivered the judgment of the court, with opinion. |
| | Presiding Justice Lavin and Justice Fitzgerald Smith concurred in the judgment and opinion. |

**OPINION**

¶ 1    In this consolidated appeal, plaintiffs, CNA International, Inc. (CNA), and Gold Coast Development, LLC, appeal the trial court's orders: (1) granting the motion of defendants Steven H. Baer and Rally Capital Services, LLC, to dismiss counts I through IV of plaintiffs' second amended complaint; (2) discharging Baer as receiver; (3) granting defendant Cole Taylor Bank's motion to dismiss counts V and VI of plaintiffs' second amended complaint; and (4) denying plaintiffs' request to file a third amended complaint. For the reasons that follow, we affirm.

¶ 2                         BACKGROUND

¶ 3    On August 30, 2005, Gold Coast Development, LLC (Gold Coast), entered into a mortgage agreement with Cole Taylor Bank (Cole Taylor) relating to property located at 1938 West Diversey Avenue in Chicago (the subject property). The subject property was a partially constructed three-unit condominium building. This action arose when Cole Taylor filed a verified complaint for mortgage foreclosure on May 14, 2008 against Gold Coast regarding the subject property, as well as two verified complaints relating to two other properties.

¶ 4    In its complaint regarding the subject property, Cole Taylor alleged that it had made a commercial loan to Gold Coast for $907,605 evidenced by a promissory note and secured by a construction mortgage on the subject property. Cole Taylor further alleged that Gold Coast was in default because: (1) it had not paid monthly installments of principal and interest that were due; (2) mechanics' liens had been filed against the property; and (3) Gold Coast had not paid the real estate taxes that were due. Cole Taylor sought to recover $934,654.85 on a promissory note executed by Gold Coast, as well as guarantees executed by certain individuals. Cole Taylor also sought a judgment of foreclosure and sale, an order granting possession and appointing a receiver for the subject property, costs, expenses, and attorney fees.

¶ 5    The record indicates that Gold Coast had failed to procure insurance for the subject property, as required under the mortgage agreement. In June 2008 Cole Taylor "force placed" an insurance policy (No. CCP538144) with Century Surety Company protecting Cole Taylor's interests.

¶ 6    On November 10, 2008, Cole Taylor filed a verified motion for appointment of a receiver pursuant to section 15-1701 of the Illinois Mortgage Foreclosure Law. 735 ILCS 5/15-1701 (West 2008) (the Act). On December 23, 2008, Gold Coast filed a motion to strike Cole Taylor's motion for the appointment of a receiver. On December 24, 2008, over Gold Coast's objections, the court appointed defendant Steven Baer of Rally Capital Services, LLC, as receiver. The five-page order granted Baer the power and authority allowed under section 15-1704 of the Act (735 ILCS 5/15-1704 (West 2008)). Among other things, the receiver was "authorized to protect, possess, preserve, control, manage, and operate" the property. Gold Coast was directed to deliver possession of the subject property, any insurance policies, maintenance and service contracts, and other documentation relating to the management and development of the subject property. On December 30, 2008, the appointment of the receiver became effective when the court entered the receiver's bond of $25,000. Gold Coast did not file an appeal from the December 24, 2008 order.

¶ 7    On January 28, 2009, Cole Taylor filed an emergency motion for authority to forcibly enter the premises. The motion was granted on January 30, 2009, and the receiver was "authorized to forcibly enter the premises as of 3:30 p.m. CST on January 30, 2009." Gold Coast did not file an appeal from the January 30, 2009 order.

¶ 8    On January 30, 2009, according to a report in the record prepared for Baer by Vicky Jones of VJ Rally Capital Services, LLC, and dated February 6, 2009, Baer's agent gained access to the property by forced entry pursuant to the court order. The agent conducted a site inspection on January 30 and January 31, 2009, which revealed significant damage to the property. The report noted that the overall condition of the property was poor because it had not been winterized. The report further noted frozen and warped window casings, the presence of ice on the hardwood floors and in the cracked toilet tanks, as well as water damage and mold throughout the building. Based on the site inspection, the report contained several "recommendations to be considered to preserve and protect the property in order to not have continued damage and increasing costs of repairs." The recommendations included having all mechanicals inspected by trade professionals and to follow their recommendations, remediating all water-damaged areas, establishing utility services in Baer's name, removing construction debris from the site, inspecting the roof, installing a security system, implementing a maintenance schedule for mechanicals, and establishing general property maintenance–landscaping, filters, lights and a security system.

¶ 9    The court order appointing Baer provided that he file the initial report with the court on or before January 30, 2009 and that a hearing on the report was to be conducted on February 6, 2009. The record is unclear as to whether either occurred but no party has raised it as an issue. Baer did provide a copy of the report to Cole Taylor and it chose not to follow the receiver's recommendations. In February 2009, Cole Taylor submitted a claim for property damage to Century Surety Company.

¶ 10 While the litigation was pending, Cole Taylor began settlement discussions with Gold Coast and the personal guarantors. They began negotiating a potential "global" resolution of this and the two other mortgage foreclosure actions.

¶ 11 On July 20, 2009, Cole Taylor entered into a settlement agreement and general mutual release with Gold Coast. Cole Taylor accepted a deed in lieu of foreclosure on one of the three properties, that is not involved in this appeal. As part of the settlement, Cole Taylor agreed to assign certain of its rights, titles, and interests to plaintiff CNA, in exchange for, among other things, a single, lump sum of $1,920,000 representing a payoff of the notes on the subject property and a second property. CNA was created by the guarantors.

¶ 12 The agreement provided that nothing in it "shall prevent [CNA] from bringing any claims, demands or suits against Steve Baer, as the Court-appointed Receiver, for ay [*sic*] acts or omissions of his that occurred during the period of time in which he served as the Court-appointed Receiver." The settlement agreement also provided that Cole Taylor would provide to CNA "the contact names, policy numbers and phone numbers of current insurers of the property and the respective expiration dates, including any builder risk policies in place." However, nowhere mentioned in the agreement is Cole Taylor's right, title, or interest in or to any insurance policy, or its proceeds. The agreement contained an unconditional release and discharge from Gold Coast to Cole Taylor "from any and all obligations, claims, demands, actions, arbitrations, attorneys fees and liability, past, present, and future, of whatever kind and character, known or unknown including without limitation, all such claims relating in any way to, arising from or concerning [the subject property, and the other two properties]." The agreement expressly assigned to CNA all of Cole Taylor's rights to the pending litigation against Gold Coast.

¶ 13 Pursuant to the settlement agreement, as evidenced by the various documents, Cole Taylor and CNA executed specific assignments: (1) property assessment appeal for one of the other properties; (2) construction mortgage regarding subject property; (3) promissory note regarding subject property; (4) mortgage regarding a second property; (5) promissory note regarding a second property; (6) three commercial guaranties from certain individuals; (7) guaranty of completion and performance from a certain individual; and (8) rights to the pending litigation against Gold Coast. With respect to the assignment of the construction mortgage, Cole Taylor assigned to CNA all of Cole Taylor's "right, title and interest now owned or hereinafter acquired in, to and under that certain Construction Mortgage dated August 30, 2005 made and executed by Gold Coast *** together with the Note as described therein, and the money due or to become due thereon." There is no document evidencing any assignment of any insurance policy or any proceeds resulting therefrom, including the Century Surety Company insurance policy.

¶ 14 CNA gained access to the property in July 2009 and discovered significant water damage. The record contains an affidavit from Soodong Choi, one of the guarantors, in his role as general counsel for CNA, stating that "in mid-August of 2009, CNA filed a claim against the insurance policy issued by Century Surety Company."

¶ 15 In September 2009, CNA filed a motion to substitute its appearance in the litigation in place of Cole Taylor. On October 16, 2009, the court granted the motion. Thus, CNA became

the plaintiff in the litigation against Gold Coast.

¶ 16    In March 2010, Century Surety Company paid Cole Taylor approximately $44,000 for Cole Taylor's February 2009 property damage claim.

¶ 17    On August 26, 2010, more than a year after the settlement, CNA, together with Gold Coast, filed a motion for leave to file an amended complaint, in the pending mortgage foreclosure action, based upon the water damage that CNA had discovered in July 2009. CNA and Gold Coast alleged that the water damage occurred during the time Baer was in exclusive control and possession of the property. The amended complaint removed all counts of the original complaint, all of which had been filed against Gold Coast and certain personal guarantors, at least one of which was a member of Gold Coast. The amended complaint contained two counts. Both counts alleged negligence against Baer and Rally Capital Services, LLC (Rally). Count I was filed on behalf of CNA; count II was filed on behalf of Gold Coast.

¶ 18    On September 27, 2010, the trial court granted CNA and Gold Coast leave to file their amended complaint. Thus, CNA and Gold Coast were realigned from plaintiff and defendant to coplaintiffs against the receiver. On or about September 29, 2010, Century Surety Company denied CNA's August 2009 claim.

¶ 19    On October 25, 2010, Baer and Rally filed a motion to dismiss the amended complaint. CNA and Gold Coast filed a response to the motion to dismiss and a simultaneous motion for leave to file a second amended complaint. The trial court granted the motion for leave to amend.

¶ 20    On or about January 6, 2011, CNA and Gold Coast filed a second amended complaint. Counts I and II were brought by CNA "as Assignee of Cole Taylor Bank." Count I alleged negligence against Baer and count II alleged negligence against Rally under a *respondeat superior* theory. Counts III and IV were brought by Gold Coast. Count III alleged negligence against Baer and count IV alleged negligence against Rally under a *respondeat superior* theory. Counts V and VI were brought, in the alternative, by CNA against Cole Taylor. Count V alleged breach of contract and count VI alleged unjust enrichment.

¶ 21    In support of their claims against Baer and Rally, CNA and Gold Coast alleged that Baer was negligent in not accessing the property sooner, that Baer had not been denied access to the property after being appointed receiver, that Gold Coast had responded to telephone calls from Rally, and that Gold Coast had made arrangements for Rally to take possession of the keys to the property in early January. CNA and Gold Coast further alleged that, after Baer gained access to the property through the forcible detainer order, he was negligent in not remedying the water damage.

¶ 22    On January 28, 2011, Baer and Rally filed a motion to dismiss counts I through IV of the second amended complaint pursuant to section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2010). Baer and Rally argued that all claims premised on CNA and Gold Coast being damaged as a result of Baer not entering the property sooner were precluded as a matter of law because Gold Coast failed to appeal the forcible entry order and, therefore, under the law of the case doctrine, could not contest the basis for the order. They also argued that plaintiffs could not allege facts establishing that Baer failed to maintain the

property in as good a condition as existed at the time he gained access to the property. Additionally, regarding the claim that Baer was negligent in not remedying the water damage, Rally argued it was not liable under a theory of *respondeat superior* and Baer was not its agent but instead was an agent of the court. Baer and Rally also asserted that Baer had no duty to CNA or Gold Coast to remediate the water damage problem when he was not provided with funds to perform the remediation.

¶ 23     On February 17, 2011, Cole Taylor filed a motion to dismiss counts V and VI of the second amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure. 735 ILCS 5/2-619.1 (West 2010). Cole Taylor argued that count V, the breach of contract claim, should be dismissed pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)) because the settlement agreement and supporting exhibits were clear that there was no agreement to assign any rights to any insurance policy to CNA. Cole Taylor sought to dismiss count VI, the unjust enrichment claim, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)) because Cole Taylor could not have been unjustly enriched by receiving the benefits of an insurance policy that Cole Taylor itself procured, paid for, and made a claim against.

¶ 24     On April 15, 2011, after hearing arguments, the trial court granted the receiver's motion to dismiss and dismissed all claims against Baer and Rally (counts I through IV) with prejudice. As to Cole Taylor's motion, the trial court dismissed count VI (unjust enrichment) pursuant to section 2-615 in favor of Cole Taylor. The court denied the motion to dismiss count V (breach of contract) and granted Cole Taylor 60 days to file its answer to count V. The court also denied CNA and Gold Coast's oral motion for leave to file a third amended complaint.

¶ 25     On July 1, 2011, the trial court denied CNA and Gold Coast's motion to reconsider the denial of their oral motion to reconsider, and also discharged Baer as receiver. On July 21, 2011, the trial court granted a motion to supplement the receiver's final report, approved the final report, approved the issuance of a receiver's certificate to Rally in an amount equal to the professional fees that had been approved, and cancelled the receiver's bond. Also on July 21, 2011, the trial court made the order of dismissal of Baer and Rally a final and appealable order pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). On July 28, 2011, CNA and Gold Coast filed a notice of appeal.

¶ 26     On or about July 29, 2011, Cole Taylor filed its renewed motion to dismiss count V of the second amended complaint pursuant to section 2-619. Attached to the motion was an affidavit of Linda Weber, Cole Taylor's group senior vice president, special assets. She testified that at no time did Cole Taylor agree to assign its right, title and interest in the insurance policy or proceeds to CNA. CNA filed a response and attached an affidavit of Soodong Choi, who stated that no one at Cole Taylor informed CNA that Cole Taylor believed it was entitled to the insurance proceeds.

¶ 27     On September 6, 2011, the trial court granted Cole Taylor's motion to dismiss count V of the second amended complaint. On September 27, 2011, CNA and Gold Coast filed a notice of appeal from the orders dismissing counts V and VI. The two appeals were subsequently consolidated.

## STANDARD OF REVIEW

¶ 29 "A motion to dismiss under section 2-615(a) of the Code (735 ILCS 5/2-615(a) (West 2006)) tests the legal sufficiency of the complaint, whereas a motion to dismiss under section 2-619(a) of the Code (735 ILCS 5/2-619(a) (West 2006)) admits the legal sufficiency of the complaint, but asserts affirmative matter outside the complaint that defeats the cause of action. [Citations.]" *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). Our standard of review is *de novo* under either section. *Id.*

¶ 30 Regarding 2-615 motions to dismiss, we have further explained:

"A complaint should be dismissed under section 2-615 for failure to state a cause of action only when it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to relief. [Citations.] This broad statement, however, should not be interpreted as an adoption of notice pleading. [Citation.] Illinois remains a fact-pleading jurisdiction. [Citation.]

A section 2-615 motion admits all well-pleaded facts as true, but not conclusions of law or factual conclusions which are unsupported by allegations of specific facts. [Citation.] If after disregarding any legal and factual conclusions the complaint does not allege sufficient facts to state a cause of action, the motion to dismiss should be granted. [Citation.] In ruling on a motion to dismiss for failure to state a cause of action, the complaint's factual allegations are to be interpreted in the light most favorable to the plaintiff, but factual deficiencies may not be cured by liberal construction. [Citation.]" *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 16 (1995).

¶ 31 As we have also explained:

"The purpose of a section 2-619 motion is to dispose of issues of law and easily proved issues of fact early in the litigation. [Citation.] When ruling on a section 2-619 motion, the court must construe the pleadings and supporting documents in the light most favorable to the nonmoving party. [Citation.] The reviewing court must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent an issue of material fact, whether a dismissal was proper as a matter of law. [Citation.] We may affirm the dismissal on any proper basis found in the record. [Citation.]" *Zerjal v. Daech & Bauer Construction, Inc.*, 405 Ill. App. 3d 907, 910-11 (2010).

¶ 32 With respect to the trial court's order denying plaintiff's leave to file a third amended complaint, we review the decision under an abuse of discretion standard. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273-74 (1992).

## ANALYSIS

¶ 34 The Trial Court Correctly Granted Baer and Rally's Motion to Dismiss

¶ 35 Plaintiffs concede that only Gold Coast is pursuing the claim of negligence against Baer and Rally and there is no issue as to any claim by CNA against the receiver. Thus, the trial court correctly dismissed counts I and II of the second amended complaint. Gold Coast asserts that the receiver was obligated to take action to preserve the condition of the property

and failed to do so both before and after he took possession of the property.

¶ 36     We shall first address Gold Coast's "pre-access" claim. In support of its claim, Gold Coast contended that Baer had not been denied access to the subject property. Gold Coast stated that it had responded to telephone calls from Rally and had made arrangements for Rally to take possession of the keys in early January.

¶ 37     It is undisputed that, after Baer's appointment became effective on December 30, 2008, Cole Taylor filed, on January 28, 2009, an emergency motion for authority to forcibly enter the premises. Baer stated that despite the trial court's order directing Gold Coast to deliver possession of the subject property to Baer, he still could not gain access. Baer noted that he had "attempted to work with the defendants in order to gain access to the [subject property] only to be rebuked for one reason or another." Baer also argued that "[a]ny further delay in gaining access to and securing the [subject property] could result in damage to the [subject property] and will undoubtably result in irreparable harm to Cole Taylor Bank's collateral." The motion was presented to the court, and granted in full, on January 30, 2009. The order provided that the receiver was "authorized to forcibly enter the premises as of 3:30 p.m. CST on January 30, 2009." Gold Coast did not file an appeal from the January 30, 2009 order.

¶ 38     The trial court concluded that the law of the case doctrine precluded Gold Coast from now asserting that Baer was negligent in not gaining access sooner. "The rule of the law of the case provides that where an issue has been litigated and decided, a court's unreversed decision on a question of law or fact settles that question for all subsequent stages of the suit." *Norton v. City of Chicago*, 293 Ill. App. 3d 620, 624 (1997).

¶ 39     Gold Coast argues that the law of the case doctrine does not apply to the basis for the trial court's order, *i.e.*, Baer's inability to access the property because no evidentiary hearing was held. We believe that the law of the case doctrine now precludes Gold Coast from arguing that Baer had access to the property. It has been explained that the law of the case doctrine encompasses a court's explicit decisions, as well as those issues decided by necessary implication. *Aardvark Art, Inc. v. Lehigh/Steck-Warlick, Inc.*, 284 Ill. App. 3d 627, 632-33 (1996). More importantly, as Baer correctly notes, the grant of the emergency motion to allow him access was final and appealable under Illinois Supreme Court Rule 307(a)(3) (eff. Feb. 26, 2010). Gold Coast failed to appeal. Thus, the order granting the motion in full became the law of the case. See *Bradford v. Wynstone Property Owners' Ass'n*, 355 Ill. App. 3d 736, 740 (2005). The trial court correctly concluded that Gold Coast failed to state a cause of action for negligence against Baer for failing to access the subject property before the date he accessed it through the use of forcible entry.

¶ 40     We next address Gold Coast's "post-access" claims of negligence against Baer. Gold Coast alleged that Baer was negligent in failing to take reasonable steps to remediate the damage to the subject property, and secure and protect the subject property to prevent future damage from occurring.

¶ 41     Under the Act, a receiver is required to use reasonable efforts "to maintain the real estate and other property subject to the mortgage in at least as good condition as existed at the time the receiver took possession." 735 ILCS 5/15-1704(c)(2) (West 2008). In the instant case, as demonstrated by the receiver's report, there was substantial and significant damage to the

property prior to the time Baer gained access by forcible entry. The damage included serious water and mold damage throughout. Baer met his obligations under the Act by identifying the damage to Cole Taylor and making recommendations. Rather than remediate the damage, Cole Taylor filed a claim with its insurer. As the trial court concluded, to the extent Gold Coast has a problem with Cole Taylor's decision not to remediate the damage, that is an issue between Gold Coast and Cole Taylor.

¶ 42　　We also note that section 15-704(c) of the Act explicitly conditions a receiver's duties, including the duty to maintain the property. The Act provides that the receiver's duties apply only: "to the extent the receiver receives sufficient receipts from the mortgaged real estate, such other property or other sources." 735 ILCS 5/15-1704(c) (West 2008). The subject property here did not generate any receipts from rent. Nothing in the Act imposes a duty on the receiver to invest his own funds in the property for which he has been appointed a receiver. Thus, Gold Coast has failed to state a cause of action for negligence against Baer for his "post-access" actions.

¶ 43　　In view of our determination, we need not address Rally's argument that it could not be liable for Baer's negligence under a *respondeat superior* theory. The trial court correctly concluded that Gold Coast failed to state a cause of action for negligence against Baer and Rally.

¶ 44　　　　The Trial Court Correctly Granted Cole Taylor's Motion to Dismiss

¶ 45　　Count V of the second amended complaint asserts a claim for breach of contract brought by CNA against Cole Taylor. "In order to state a cause of action for breach of contract, a plaintiff must allege (1) an offer and acceptance; (2) consideration; (3) definite and certain terms of the contract; (4) plaintiff's performance of all required contractual conditions; (5) defendant's breach of the terms of the contract; and (6) damage resulting from the breach." *Weis v. State Farm Mutual Automobile Insurance Co.*, 333 Ill. App. 3d 402, 407 (2002).

¶ 46　　The basis of Gold Coast's claim against Cole Taylor was that it "accepted and retained payment for a claim against the insurance policy in existence against the [subject property] at the time of the ice and water damage." Gold Coast attached, as exhibits to its second amended complaint, copies of the assignments of the mortgage and the promissory note to the subject property. It did not, however, attach the settlement agreement or any of the other assignments and now argues that "plaintiffs cannot see where any other documents were shown to be relevant." We disagree. Moreover, although stating it for a different proposition (namely, that the contractual language requiring Cole Taylor to provide the insurance information was the same as assigning Cole Taylor's right to the insurance proceeds), plaintiffs concede that "it was undisputed that the assignment was part of a broader settlement agreement."

¶ 47　　Section 2-606 of the Code of Civil Procedure states:

"If a claim or defense is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit or recited therein ***. *** [T]he exhibit constitutes a part of the pleading for all purposes." 735 ILCS 5/2-606 (West 2008).

A plaintiff who alleges breach of contract is statutorily required to attach the contract at issue

to its complaint. *Barber v. American Airlines, Inc.*, 398 Ill. App. 3d 868, 885 (2010), *rev'd on other grounds*, 241 Ill. 2d 450 (2011). Although plaintiffs attached only certain exhibits to their second amended complaint, all settlement documents are to be considered. See, *e.g.*, *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 17 (1995). Plaintiffs assert that *Lagen* is inapposite because the trial court there considered the additional documents whereas the record here does not show that the trial court did so. Our review is *de novo* and this distinction is immaterial. As we have explained, we may affirm the trial court's dismissal on any proper basis found in the record. *Zerjal*, 405 Ill. App. 3d at 911.

¶ 48     An assignment is a contract and is interpreted or construed according to the rules of contract construction. *Amalgamated Transit Worker's Union, Local 241 v. Pace Suburban Bus Division*, 407 Ill. App. 3d 55, 60 (2011). "The cardinal rule of contract interpretation is to discern the parties' intent from the contract language." *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 308 (2008). Unambiguous contract language should be given its plain and ordinary meaning. *Id.* Under the clear and unambiguous terms of the assignment, Cole Taylor assigned to CNA all of Cole Taylor's "right, title and interest now owned or hereinafter acquired in, to and under that certain Construction Mortgage dated August 30, 2005 made and executed by Gold Coast *** together with the Note as described therein, and the money due or to become due thereon." It is undisputed that there is no document evidencing any assignment of any insurance policy or any proceeds resulting therefrom, including the Century Surety Company insurance policy. It is also undisputed that Cole Taylor's right, title, or interest in or to any insurance policy, or its proceeds, is not mentioned in the agreement. As Cole Taylor notes, it assigned rights to receive money due on the note and not money due on a separate insurance contract referenced nowhere in the assignment.

¶ 49     Nonetheless, CNA takes the position that "Cole Taylor's insurable interest in the subject property arose only from the construction mortgage." CNA contends that Cole Taylor's assignment effectively transferred Cole Taylor's forced placed insurance policy, and all of its rights under the policy, to CNA. CNA has not cited any authority in support of its contention. Additionally, the circumstances surrounding the settlement do not support its argument.

¶ 50     As Cole Taylor notes, the parties executed 10 separate assignments as part of the "global" settlement. None assigned, or even mentioned, Cole Taylor's rights in its insurance policy. Count V contains bare assertions that part of the consideration for the settlement was the payment of insurance premiums advanced by Cole Taylor and that Cole Taylor agreed to cooperate with CNA and assist CNA in working with Century Surety Company toward payment of a claim. However, CNA did not allege what the insurance premiums for the forced placed policy were, what the outstanding loan balance was on the subject property (or the second property). Moreover, Choi's declaration in opposition to Cole Taylor's motion to dismiss count V contained assertions made on "information and belief" that Cole Taylor added the premiums for the insurance it had placed on the subject property to the loan balance. CNA also failed to allege *how* Cole Taylor had "cooperated" with CNA in presenting an insurance claim to Century Surety Company. We agree with Cole Taylor that these conclusory allegations are not supported by specific factual allegations and can be disregarded. Thus, CNA's breach of contract claim fails. The trial court correctly dismissed

count V of the second amended complaint pursuant to section 2-619.

¶ 51    Plaintiffs' unjust enrichment claim in count VI also fails. "[W]here a specific contract governs the relationship between the parties, the doctrine of unjust enrichment is inapplicable." *Karimi v. 401 North Wabash Venture, LLC*, 2011 IL App (1st) 102670, ¶ 14. Although count VI pled unjust enrichment in the alternative to count V's breach of contract claim, it incorporated the same allegations including paragraph 13 which alleged the existence of the assignment which we have already explained to be a contract. Moreover, "[t]o state a claim for unjust enrichment, a complaint must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *A.P. Properties, Inc. v. Rattner*, 2011 IL App (2d) 110061, ¶ 11. Count VI does not meet this standard.

¶ 52          The Trial Court Did Not Abuse Its Discretion in Denying Plaintiffs Leave
                          to File a Third Amended Complaint

¶ 53    Plaintiffs also contend that the trial court abused its discretion in refusing to allow them to file a third amended complaint. Plaintiffs made an oral motion to amend their complaint at the end of the hearing on April 15, 2011, which the trial court denied. Thereafter, plaintiffs filed a motion to reconsider on May 24, 2011. The record contains no report of proceedings or bystander's report. The appellant has the burden of providing a sufficient record to support a claim of error, and in the absence of such a record, the reviewing court will presume that the trial court's order was in conformity with established legal principles and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Moreover, as defendants correctly noted in their briefs, and contrary to plaintiffs' argument, the proposed third amended complaint did not cure the deficiencies of the second amended complaint. See, *e.g.*, *Reuter v. MasterCard International, Inc.*, 397 Ill. App. 3d 915, 929 (2010) (a court does not abuse its discretion in refusing to allow a plaintiff to amend a complaint if the proposed amendment will not cure the defects in the pleading). Plaintiffs have failed to show that the trial court abused its discretion in denying them leave to file a third amended complaint.

¶ 54                              CONCLUSION

¶ 55    In accordance with the foregoing, we conclude that the trial court correctly dismissed the second amended complaint. We also conclude that the trial court did not abuse its discretion in denying plaintiffs' leave to file a third amended complaint. We therefore affirm the judgment of the circuit court of Cook County.

¶ 56    No. 1-11-2174, Affirmed.

¶ 57    No. 1-11-2893, Affirmed.