2022 IL App (1st) 200588-U

FIFTH DIVISION
April 29, 2022

No. 1-20-0588

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| 1030 W. NORTH AVE. BLDG., LLC, an Illinois limited liability company, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19 L 4649 |
| THE FIRM, LLC, d/b/a HI FI PERSONAL FITNESS, an Illinois limited liability company, | ) ) ) | |
| Defendant-Appellant. | ) ) ) | Honorable Jerry A. Esrig, Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held:*    Provisions in assignments of rents that allowed assignee to collect rents without possession were severable; lien created by assignments survived the foreclosure; plaintiff did not have standing to pursue unpaid rent from tenant; affirmed.

¶ 2    Plaintiff, 1030 W. North Ave. Bldg., LLC, appeals an order of the circuit court that entered summary judgment for defendant, The Firm, LLC. Plaintiff sued defendant for payments that were due under a lease agreement. Defendant asserted that plaintiff did not have standing because

plaintiff assigned its commercial leases and rents to its lender as security for a mortgage and lost the property in a 2011 foreclosure judgment and subsequent sheriff's sale, which left a deficiency. On appeal, plaintiff contends that (1) the assignments of rents should not be enforced because they are void as against public policy, and (2) the lien on rents created by the assignments was extinguished by the foreclosure. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Plaintiff initially filed its action to collect unpaid rent in 2010, but it was voluntarily dismissed without prejudice in 2013. Plaintiff refiled its complaint in 2014, stating that beginning in December 2004, defendant failed to make required payments under a lease, including rents, utilities, and construction costs. The total amount allegedly due was $233,196.55.

¶ 5      On May 11, 2016, defendant filed a motion to dismiss due to plaintiff's lack of standing. Defendant stated that plaintiff lost the property in a previous foreclosure proceeding. The subject mortgage included an assignment of leases and rents, and plaintiff and its lender also executed a separate assignment of leases and rents. Defendant asserted that due to the foreclosure and subsequent $12 million deficiency judgment that remained unpaid, plaintiff lost all rights to the rents. Defendant clarified that it was not asserting the rights of plaintiff's lender, and was only demonstrating that it was the lender who held all lease, contract, and other rights associated with the property.

¶ 6      The record indicates that plaintiff failed to make payments to its lender starting in June 2010. Plaintiff was served with a summons and foreclosure complaint in October 2010. On January 26, 2011, the court entered an order appointing a receiver for the property. A judgment of foreclosure was entered on March 23, 2011. On June 1, 2011, the court entered an order approving

the sheriff's report of sale and confirming sale, which provided for a deficiency judgment of around $12 million. The property was conveyed and title transferred to the lender by a judicial sales deed.

¶ 7    Plaintiff's mortgage was recorded in 2004. A section of the mortgage titled "Assignment of Rents; Appointment of Receiver; Lender in Possession" stated in part:

> "As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby presently, absolutely and unconditionally assigns and transfers to Lender all the rents and revenues of the Property, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Property *** [P]rior to an Event of Default, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower, *** it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by a court-appointed receiver, Borrower's license to collect the rents and revenues shall immediately cease and terminate, and Lender shall immediately be entitled to possession of all rents and revenues of the Property as specified in this Section as the same become due and payable, including, but not limited to, rents due and unpaid ***.
>
>        ***
>
>    Upon occurrence of an Event of Default, *** Lender shall be entitled to the appointment of a receiver for the Property *** and Lender may in person, by agent or by a court-appointed receiver, *** enter upon and take and maintain full

control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof ***.

All rents and revenues *** shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the rents, including *** costs of repairs to the Property ***."

¶ 8    The mortgage referred to the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1101 *et seq.*) (West 2010)), stating in part:

"It is the express intention of the Borrower and Lender that the rights, remedies, powers and authorities conferred upon the Lender pursuant to this Instrument shall include all rights, remedies, powers and authorities that a mortgagor may confer upon a lender under the Illinois Mortgage Foreclosure Law [citation] *** and/or as otherwise permitted by applicable law, as if they were expressly provided for herein. In the event that any provision in this Instrument shall be inconsistent with any provision in the [Foreclosure Law], the provisions of the [Foreclosure Law] shall take precedent over the provisions of this Instrument, but shall not invalidate or render unenforceable any other provision of this Instrument that can be construed in a manner consistent with the [Foreclosure Law].

    ***

To the extent the [Foreclosure Law] may limit the powers, authorities and duties purportedly conferred hereby, such power, authorities and duties shall include those allowed, and be limited as proscribed by the [Foreclosure Law] at the time of their exercise or discharge."

¶ 9    The mortgage further contained a provision that addressed severability:

> "In the event that any provision of this Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Instrument or the Note which can be given effect without the conflicting provisions, and to this end the provisions of this Instrument and the Note are declared to be severable."

¶ 10    As noted above, plaintiff and its lender also executed a separate assignment of leases and rents, which was recorded in 2004. The assignment stated in part:

> "Assignor does hereby and absolutely and unconditionally grant *** as security for the indebtedness secured by the Instrument, all of the right, title and interest of the Assignor in, to and under the Leases, together with all rents, earnings, income, profits, benefits and advantages arising from the Property and from said Leases and all other sums due or to become due under and pursuant thereto, and *** the immediate and continuing right to receive and collect all rents, income, revenues, issues, profits, condemnation awards, insurance proceeds, moneys and security payable or receivable under the Leases *** It is intended by Assignor that this Assignment constitute a present, absolute assignment of the Leases, and not an assignment for additional security only. *** [S]o long as no Event of Default has occurred, Assignor shall have the revocable right and revocable license to occupy the Property as landlord or otherwise and to collect, use and enjoy the rents, issues and profits and other sums payable under and by virtue of any Lease *** provided that after any such Event of Default, any

amounts collected by Assignor shall be held by Assignor in trust for the benefit of Assignee for use in the payment of all sums due on the Loan.

This Assignment is made and given and shall remain in full force and effect until: (a) the payment in full of all principal, interest and other sums due under the Note; and (b) the performance and observance by Assignor of all the terms, covenants and conditions to be performed or observed by Assignor under the Note and the other Loan Documents.

\* \* \*

Upon the occurrence of an Event of Default, \*\*\* Assignee, at its option, shall have the complete right, power, and authority (a) without taking possession, to demand, collect and receive and sue for the rents and other sums payable under the Leases and, after deducting all reasonable costs and expenses of collection \*\*\* as determined by Assignee, apply the net proceeds thereof to the payment of any indebtedness secured hereby \*\*\* and (c) without regard to the adequacy of the security, with or without process or law, personally or by agent or attorney, or by a receiver to be appointed by court, then and thereafter to enter upon, take and maintain possession of and operate the Property, or any part thereof, \*\*\* and hold, operate, manage and control the Property, \*\*\* and at the expense of Assignor, from time to time cause to be made all necessary or proper repairs, renewals, replacements, useful alterations, additions, betterments and improvements to the Property \*\*\*.

After payment of all proper charges and expenses, including the just and reasonable compensation for the services of Assignee *** in connection with the operation, management and control of the Property and the conduct of the business thereof, *** Assignee may *** credit the net amount of income which Assignee may receive by virtue of this Assignment and from the Property to any and all amounts due or owing to Assignee from Assignor under the terms and provisions of the Note and the Loan Documents."

* * *

The rights and remedies of Assignee hereunder are cumulative and not in lieu of, but are in addition to, any rights or remedies which Assignee shall have under the Note, any of the Loan Documents, or at law or in equity ***.

* * *

In addition to the above, upon the occurrence of an Event of Default, Assignor expressly consents to the appointment of a receiver for the Property, without notice, either by the Assignee or a court of competent jurisdiction, to take all acts in connection with the Property permitted by law or in equity and to deduct from any and all rents received from the Leases an amount approved by the court to compensate such receiver for its actions.

* * *

If any one or more of the provisions of this Assignment, or the

applicability of any such provision to a specific situation, shall be held

invalid or unenforceable, such provision shall be modified to the minimum

extent necessary to make it or its application valid and enforceable, and

the validity and enforceability of all other provisions of this Assignment

and all other applications of any such provision shall not be affected

thereby.

\* \* \*

If there is any conflict between the terms of this Assignment and

the provisions pertaining to assignment of rents and leases in the

Instrument, Assignee shall have the right to select the applicable

provision."

¶ 11    In response to defendant's motion to dismiss, plaintiff asserted that it had the right to any

rent owed while it was in possession. Further, only the mortgagee could enforce the lien created

by the assignment of rents, and further, the lien created by the assignment was extinguished after

the foreclosure judgment was entered.

¶ 12    On July 6, 2016, the court denied defendant's motion to dismiss. The court stated in a

written order that plaintiff had the right to collect any rent that was due before January 2011, and

plaintiff's lender could recover rent that accrued after the receiver took possession. The court later

denied defendant's motion to reconsider in part because the court was "not convinced that the lien

established when Plaintiff's lender perfected its assignment in the foreclosure action continues in

perpetuity."

¶ 13    Defendant moved for a Rule 308 finding and certification (Ill. S. Ct. R. 308 (eff. Jan. 1, 2016)), asserting that there was no clear guidance from the appellate court on the standing matter at issue. The court granted the motion on November 4, 2016, and certified the following question for appeal:

> "Does a mortgage lender which has perfected its assignment of leases and rents lien by foreclosing on and taking possession of the pledged real estate, or its borrower against whom the foreclosure was entered, have standing to sue under one of the assigned leases to collect rent which allegedly accrued prior to the date the mortgage lender took possession of the real estate?"

¶ 14    This court denied defendant's petition for leave to appeal, whereupon defendant filed a petition for leave to appeal to the Illinois Supreme Court. On May 24, 2017, our supreme court denied the petition for leave to appeal and entered a supervisory order that instructed this court to allow leave to appeal and consider the appeal on the merits.

¶ 15    On August 3, 2018, this court issued a Rule 23 order (Ill. S. Ct. R. 23 (eff. Apr. 1, 2018)) that dismissed the appeal and remanded the case to the circuit court for further proceedings. *1030 W. North Ave. Bldg., LLC v. The Firm, LLC*, 2018 IL App (1st) 163221-U. In part, this court found that the certified question was improperly worded because it confused the perfection and enforcement of a lien. *Id*. ¶ 13. Also, answering the certified question would have required this court to examine the language of the assignment and apply the law to it, which was beyond the scope of a Rule 308 appeal. *Id*. ¶ 16. We further noted that the assignment may violate public policy because it allowed the lender to collect rents and revenues without possession, but that issue was not briefed by the parties. *Id*. ¶ 17.

¶ 16    Returning to the circuit court, defendant filed a motion to reconsider the refusal to dismiss for lack of standing. Defendant stated that *BMO Harris Bank N.A. v. Joe Contarino, Inc.*, 2017 IL App (2d) 160371, resolved any uncertainty about the viability of the assignment lien held by plaintiff's lender.

¶ 17    Per the court's request, defendant presented its arguments in a motion for summary judgment. In part, defendant asserted that the assignments were consistent with Illinois public policy. Even if the assignments included problematic self-help language, the lender properly enforced the assignments through court-supervised foreclosure proceedings. Also, any offending language in the assignments should be severed or disregarded.

¶ 18    In response, plaintiff stated in part that there was no evidence that the receiver took any action to collect rent. Further, the judgment of foreclosure and the sheriff's sale of the property extinguished all liens on the property, including the assignment of rents.

¶ 19    At a hearing on March 4, 2020, the court stated that a mortgagee's enforcement of its rights does not depend on whether the receiver discharges its duty to collect rents because the receiver's actions are outside the mortgagee's control. Also, rather than invalidate assignment of rents clauses that offend public policy, courts impose restrictions to protect the public interest. Even an offending assignment will be enforced if the assignee actually exercised its rights consistent with the public interest, which occurred here. Also, the documents here included severability clauses. The court found that plaintiff did not have standing to bring its claim for unpaid rent, and granted defendant's motion for summary judgment. Judgment was entered in favor of defendant and against plaintiff.

¶ 20    Plaintiff timely appealed.

¶ 21                                II. ANALYSIS

¶ 22    On appeal, plaintiff contends that the assignment of rents is void as against public policy and the assignment did not survive the foreclosure. Thus, plaintiff still has an interest in the unpaid rents and has standing to maintain its suit.

¶ 23    This is an appeal from a grant of summary judgment, which is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, and admissions on file, along with any affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Gold Realty Group Corp. v. Kismet Café, Inc.*, 358 Ill. App. 3d 675, 678-79 (2005). Standing, the grounds on which summary judgment was granted, requires some injury in fact to a legally cognizable interest. *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 24. The doctrine of standing is designed to preclude people and entities with no interest in a controversy from bringing suit. *Deutsche Bank National Trust Co. v. Gilbert*, 2012 IL App (2d) 120164, ¶ 15. A lack of standing is an affirmative defense that is the defendant's burden to plead and prove. *Nationwide Advantage Mortgage Co.*, 2012 IL App (1st) 112755, ¶ 24. Whether a party has standing is a question of law that we review *de novo*. *Cashman v. Coopers & Lybrand*, 251 Ill. App. 3d 730, 733 (1993).

¶ 24    A party's standing is assessed as of the time the suit is filed. *Deutsche Bank National Trust Co. v. Iordanov*, 2016 IL App (1st) 152656, ¶ 34. Plaintiff's first action was voluntarily dismissed without prejudice in 2013. Plaintiff refiled its complaint in 2014. Because a refiling after a voluntarily dismissal without prejudice is a separate cause of action (*Kahle v. John Deere Co.*, 104 Ill. 2d 302, 306 (1984)), we will examine plaintiff's standing as of when it filed its 2014 complaint.

¶ 25    Plaintiff's standing depends on whether it lost the right to collect unpaid rents via the assignment in the mortgage and the separate assignment. As background on those documents, Illinois has adopted the lien theory of mortgages (*Kelly/Lehr & Associates, Inc. v. O'Brien*, 194

Ill. App. 3d 380, 386 (1990)), in which the mortgage is only a lien on the property, rather than a conveyance of title from the mortgagor to the mortgagee (*In re Cadwell's Corners Partnership*, 174 B.R. 744, 750 (Bankr. N.D. Ill. 1994)). For nonresidential property, a mortgage often includes an assignment of rents, "which creates a lien on rents and profits generated from the mortgaged property as additional security for the debt." *Id*. at 752. Assignments allow creditors to reach rents sooner than the completion of foreclosure proceedings. *Matter of Wheaton Oaks Office Partners Ltd. Partnership*, 27 F.3d 1234, 1242 (7th Cir. 1994). Most lien theory jurisdictions do not recognize absolute assignments of rent, in which the assignor presently sells and disposes of all of its title and interest in a property's rents and profits. *M. Ecker & Co. v. LaSalle National Bank*, 268 Ill. App. 3d 874, 879 (1994).

¶ 26    Illinois requires mortgagees to take possession of the property before collecting rents, which reflects the public policy that "seeks to prevent mortgagees from stripping the rents from the property and leaving the mortgagor and tenants without resources for maintenance or repair." *Comerica Bank-Illinois v. Harris Bank Hinsdale*, 284 Ill. App. 3d 1030, 1033 (1996). Possession may be actual or constructive. *Id*. at 1034. Constructive possession includes a circuit court's affirmative ruling on a request to appoint a receiver. *Id*. at 1035. The security interest created by the assignment is enforced when the mortgagee takes possession. *BMO Harris Bank N.A. v. Joe Contarino, Inc.*, 2017 IL App (2d) 160371, ¶ 44.

¶ 27    With these principles in mind, we turn to the two assignments at issue. The assignment in the mortgage states in part that as part of the consideration for the indebtedness evidenced by the note, the borrower "absolutely and unconditionally assigns and transfers" to the lender "all the rents and revenues of the property." The assignment permits the lender to collect rents without possession, but also states that the lender "shall be entitled to the appointment of a receiver" for

the property, who can take and maintain full control of the property "to perform all acts necessary and appropriate for the operation and maintenance thereof." Similar to the assignment in the mortgage, the separate assignment states that it is "a present, absolute assignment of the Leases." On default, the assignee may collect rent without taking possession, but a receiver may be appointed by the court to take possession and operate the property.

¶ 28 Both assignments state that they are absolute, which as stated above, are not recognized in most lien theory states. See *M. Ecker & Co.*, 268 Ill. App. 3d at 879. And, the assignments contain language that runs afoul of the requirement that the assignee take actual or constructive possession before collecting rents. See *Comerica Bank*, 284 Ill. App. 3d at 1034. But those matters do not invalidate the entire assignment.

¶ 29 The validity of absolute assignments and the possession requirement set out in *Comerica Bank* may both be affected by section 31.5 of the Conveyances Act (765 ILCS 5/31.5 (West 2012)), which was made effective in 1996 and states in part:

> "(b) If an instrument assigning the interest of the assignor in rents arising from the real property described in the instrument is recorded, pursuant to this Act, in the county in which the real property is situated, then the interest of the assignee in those rents is perfected upon that recordation without the assignee taking any other affirmative action.

>     ***

> (c) This Section applies whether the assignment is absolute, conditional, or intended as security.

(d) Unless otherwise agreed to by the parties, the mere recordation of an assignment does not affect who is entitled, as between the assignor and the assignee, to collect or receive rents until the assignee enforces the assignment under applicable law."

Because they are included in section 31.5(c), absolute assignments may indeed be valid in Illinois. Also, the language "[u]nless otherwise agreed to by the parties" in section 31.5(d) "could be construed to mean that if agreed to by the parties, recording an assignment-of-rents agreement can 'affect who is entitled, as between the assignor and the assignee, to collect or receive rents,' " which would be inconsistent with *Comerica Bank*. Robert C. Feldmeier, *Enforcing Assignment-of-Rents Provisions in Illinois*, 86 Ill. B.J. 436, 439 (1998). Under *Comerica Bank*—which was issued after section 31.5 became effective, but did not address its impact—just recording an assignment is insufficient to collect rents on default. The assignee must take actual or constructive possession. In contrast, section 31.5(d) allows parties to enforce an assignment other than pursuant to applicable law (*Joe Contarino, Inc.*, 2017 IL App (2d) 160371, ¶ 59), and so a provision that allows for rent without possession may be valid.

¶ 30     Still, when however parties agree to enforce an assignment, it must be consistent with the public policy requiring assignees to accept the benefits and the maintenance and repair burdens of the property. See *id.* ¶ 65 (if agreements to collect rent without court authority had not accounted for management expenses, arguable that agreements would have been void as against public policy). Both assignments here addressed that policy goal. The assignment in the mortgage stated that all rents and revenues would first be applied to the costs of taking control of and managing the property, including the costs of repairs. The separate assignment stated that before paying the assignee what is due under the note, the assignee first pays for expenses "in connection with the operation, management and control of the Property."

¶ 31    Defendant also asserts that problematic language in an assignment may be disregarded as long as the lender followed proper enforcement procedure, which the lender did here by having the court appoint a receiver and transfer title away from plaintiff.

¶ 32    In *Comerica Bank*, 284 Ill. App. 3d at 1034, after stating that it would not recognize a provision of an assignment agreement that allowed the mortgagee to collect rents without possession, the court considered an argument from the party seeking to uphold the assignment that it took proper steps to enforce the assignment. However, the party's actions fell short of what was required—it requested a receiver, but a court did not grant that request. *Id*. So, *Comerica Bank* does not definitively resolve the question of whether problematic language that allows for collecting rents without possession can be disregarded as long as the lender follows the proper enforcement procedure.

¶ 33    Ultimately, we do not need to resolve with certainty the questions about the impact of section 31.5 of the Conveyances Act and whether an assignee's actions can save a problematic assignment that allows for collecting rents without possession. Even if the provisions allowing rents without possession are invalid, that language is severable from both documents. When a portion of a contract is unenforceable as against public policy, "a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange." (Internal quotation marks omitted.) *Kepple & Co. v. Cardiac, Thoracic & Endovascular Therapies, S.C.*, 396 Ill. App. 3d 1061, 1066 (2009) (quoting Restatement (Second) of Contracts, § 184(1), at 30 (1981)). An enforceable provision is severable unless it is so closely connected with the rest of the contract that to enforce the valid provisions of the contract without it "would be tantamount to rewriting the agreement." (Internal quotation marks omitted.)

*Wigginton v. Dell, Inc.*, 382 Ill. App. 3d 1189, 1198 (2008) (quoting *Abbott-Interfast Corp. v. Harkabus*, 250 Ill. App. 3d 13, 21 (1993)).

¶ 34     Here, both the mortgage and separate assignment had severability clauses, which "certainly strengthens the case for the severance of the unenforceable provisions because [they] indicate that the parties intended for the lawful portions of the contract to be enforced in the absence of the unlawful portions." *Abbott-Interfast Corp.*, 250 Ill. App. 3d at 21. As defendant notes, plaintiff's lender followed the proper procedure to enforce the assignment by having a court authorize the appointment of a receiver. The mortgage also provides that the Foreclosure Law takes precedence over any inconsistent provisions, so the protections of the Foreclosure Law are part of the mortgage. Sections 15-1704(c) and (d) of the Foreclosure Law list the duties of a receiver appointed during foreclosure proceedings, which includes a number of steps to maintain the property. 735 ILCS 5/15-1704(c), (d) (West 2010)). As for the separate assignment, even in *Comerica Bank*, 284 Ill. App. 3d at 1034, the court did not invalidate the entire assignment agreement due to its problematic language—it refused to recognize "that provision of the agreement." Both the mortgage and separate assignment have numerous provisions that are unrelated to the assignee collecting rents without possession. We will not give effect to the language that allows collecting rents without possession, but the rest of the assignments are unaffected.

¶ 35     The next question is whether, once the assignments were enforced, plaintiff had an interest in the past due rents that accrued before default. An assignment is a contract and is construed according to the rules of contract construction, including that the parties' intent is discerned from the contract language. *CNA International, Inc. v. Baer*, 2012 IL App (1st) 112174, ¶ 48. Unambiguous language is given its plain and ordinary meaning. *Id.* The mortgage assigned to the

lender "all rents and revenues ***, including those now due, past due, or to become due by virtue of any lease or other agreement." On default, the lender was entitled to "all rents and revenues ***, including, but not limited to, rents then due and unpaid." The separate assignment covered "all rents, earnings, income, profits, *** and all other sums due or to become due" under the leases. Based on the plain language of the assignments, on default, the assignee—plaintiff's lender—was entitled to unpaid rent that accrued before default, which included the rent that plaintiff sought in its complaint. See *In re Randall Plaza Center Associates, L.P.*, 326 B.R. 133, 141 (Bankr. N.D. Ill. 2005) (where mortgage provided that on default, mortgagee had the right to collect the rents and profits, "including those past due and unpaid," the mortgagee could collect any unpaid rent that was due on the date of the notice of default or anytime thereafter).

¶ 36    Plaintiff asserts that it nonetheless has standing because the equitable lien on rent was extinguished by the foreclosure. Plaintiff argues that if an assignment of rents is a lien recorded to support the mortgage, then the lien dies once the security to which it is attached ceases to exist. Plaintiff states that the debt merged into the deficiency judgment and there are no other rents to collect to pay down the debt.

¶ 37    Plaintiff is incorrect. "An express pledge of rents is not extinguished by a foreclosure sale which merges the title and the debt in the same party." *Id.* (citing *Liss v. Harris*, 304 Ill. App. 173 (1940)). In *Randall Plaza*, a creditor's purchase of a property after a foreclosure extinguished the mortgage debt, but not the lien on the rents. *Id.* We are aware, as plaintiff notes, that lower federal court decisions are not binding on Illinois courts, but those decisions may be considered persuasive authority. *Asset Exchange II, LLC v. First Choice Bank*, 2011 IL App (1st) 103718, ¶ 19. *Randall Plaza* has been cited in an Illinois case, *Joe Contarino, Inc.*, 2017 IL App (2d) 160371, ¶ 75, where a consent foreclosure did not waive a lien on rents. We are unpersuaded by plaintiff's insistence

that the case on which *Randall Plaza* relied, *Liss*, 304 Ill. App., was wrongly decided. *Liss* has been cited approvingly by other cases. See *Matter of Wheaton Oaks Office Partners Ltd. Partnership*, 27 F.3d at 1243; *Chicago Title & Trust Co. v. National Bank of Albany Park in Chicago*, 17 Ill. App. 3d 721, 727-28 (1974). We see no reason to depart from *Randall Plaza*'s and *Joe Contarino*'s statements that a lien on rents is not extinguished by a foreclosure.

¶ 38    In a further attempt to argue that the lien was extinguished, plaintiff cites to cases applying the merger doctrine. See *BAC Home Loans Servicing, LP v. Popa*, 2015 IL App (1st) 142053, ¶ 36 (on entry of a foreclosure judgment, the mortgage merges into the judgment and eliminates the contract); *Poilevey v. Spivack*, 368 Ill. App. 3d 412, 414 (2006) (when a judgment based on a contract or instrument is obtained, the instrument is entirely merged into the judgment). Plaintiff overlooks that the merger doctrine only applies "to causes of action to bar relitigation of the same cause." (Internal quotation marks omitted.) *Kenny v. Kenny Industries, Inc.*, 2012 IL App (1st) 111782, ¶ 16 (quoting *Stein v. Spainhour*, 196 Ill. App. 3d 65, 70 (1990)). The merger doctrine would not apply to the lien created by the assignments because the assignments were not necessarily at issue in the foreclosure proceeding. See *State Bank of Piper City v. A Way, Inc.*, 135 Ill. App. 3d 1010, 1012-13 (1985) (merger did not extinguish right to enforce lien created by security agreements where it did not appear that documents securing notes were necessarily at issue in the earlier action). Plaintiff also states that an assignment of rights is a lien that must attach to a *res*. However, an assignment of rents is different from a perfected lien that gives a creditor an interest in a specific piece of property. *In re J.D. Monarch Development Co.*, 153 B.R. 829, 833 (Bankr. S.D. Ill. 1993). The lien created by the assignments of rents survived the foreclosure, and after default, plaintiff lost its interest in the rents due and unpaid under the lease with defendant.

¶ 39    Plaintiff further contends that defendant does not have standing to raise the assignment of rents issue. According to plaintiff, defendant is trying to borrow the shoes of the mortgagee to bar this action, but defendant is not a third-party beneficiary under the assignments. Plaintiff misconstrues defendant's position. Defendant is not trying to collect the rents. Rather, defendant is asserting that plaintiff has no legally cognizable interest in the rents because it lost that interest through the assignments. See *Nationwide Advantage Mortgage Co.*, 2012 IL App (1st) 112755, ¶ 24 (standing requires an injury in fact to a legally cognizable interest).

¶ 40    Lastly, plaintiff asserts that it has sufficient standing because rental debt that matured before a transfer of title is owed to the former landlord, citing *A.M. Realty Western, L.L.C. v. MSMC Realty, L.L.C.*, 2012 IL App (1st) 121183. In that case, the plaintiff had standing to sue for payments from a tenant that accrued before the building was sold. *Id.* ¶ 43. The tenant's debt did not pass on to the subsequent owners of the property. *Id.* ¶ 45. The tenant's lease ended before the building was sold and the lease was not assigned to the subsequent owners of the property. *Id.* ¶ 47. *A.M. Realty* did not involve a foreclosure and assignment of rents and leases, which as explained above, transferred the right to collect unpaid rents to the assignee on default. *A.M. Realty* concerns an entirely different scenario.

¶ 41                                    III. CONCLUSION

¶ 42    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 43    Affirmed.