NOTICE
Decision filed 12/09/20. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2020 IL App (5th) 190256

NO. 5-19-0256

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| LARRY E. SCHULTZ, Special Administrator of the Estate of Laurene T. Schultz, Deceased, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) | No. 18-L-61 |
| | ) | |
| ST. CLAIR COUNTY, a Unit of Local Government in the State of Illinois; ST. CLAIR COUNTY CEN-COM 9-1-1, a Public Safety Agency and Answering Point Within the State of Illinois; EMERGENCY TELEPHONE SYSTEM BOARD OF ST. CLAIR COUNTY; and JOHN DOE/JANE DOE, | ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (St. Clair County, a Unit of Local Government in the State of Illinois; St. Clair County CENCOM 9-1-1, a Public Safety Agency and Answering Point Within the State of Illinois; and Emergency Telephone System Board of St. Clair County, Defendants-Appellees). | ) ) ) ) ) ) ) | Honorable Heinz M. Rudolf, Judge, Presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Presiding Justice Boie concurred in the judgment and opinion.
Justice Wharton dissented, with opinion.

**OPINION**

¶ 1 The plaintiff, Larry E. Schultz, as special administrator of the estate of Laurene T. Schultz, deceased, appeals the April 5, 2019, order of the circuit court of St. Clair County. In this order, the circuit court dismissed, pursuant to section 2-619 of the Code of Civil Procedure

1

(Code) (735 ILCS 5/2-619 (West 2018)), his complaint against the defendants, St. Clair County (County), a unit of local government in the State of Illinois; St. Clair County CENCOM 9-1-1 (CENCOM), a public safety agency and answering point within the State of Illinois; Emergency Telephone System Board of St. Clair County (ETSB); and John Doe/Jane Doe (Doe).[1] For the following reasons, we affirm.

¶ 2                                        I. BACKGROUND

¶ 3      On January 29, 2018, the plaintiff filed a complaint in the circuit court of St. Clair County, alleging a cause of action against the defendants, pursuant to the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2016)), based on events leading to his wife's death on October 22, 2017. Count I alleges that the County authorized and provided emergency telephone services to residents through its agent, CENCOM. According to count I, the County, through Doe, its dispatch employee, acted "in reckless disregard and indifference for the safety of the decedent" in the following ways: (1) dispatched Mascoutah police to Handi-Mart, rather than All-Mart, after taking a 9-1-1 call from the plaintiff, who reported that the decedent was under the influence of alcohol, had temporarily parked her vehicle at All-Mart, and requested police assistance to prevent her from driving away in her car; (2) refused to dispatch the police to Sax's Speedi Check in Mascoutah after a second 9-1-1 call from the plaintiff, requesting police assistance to prevent the decedent from driving her vehicle, which was then parked at Sax's; and (3) failed and refused to contact Mascoutah police after two calls from the plaintiff pleading that police be sent to intercept the decedent.

¶ 4      According to count I of the complaint, the County, through Doe, knew that accurate and timely information had to be given to Mascoutah police and knew that "its willful and wanton

---

[1] Jane Doe/John Doe were unrepresented in the circuit court proceedings and are unrepresented in this appeal. We refer to the appellees as defendants for the sake of simplicity.

2

refusal to contact police or send police to intercept the decedent at a known location in Mascoutah, in reckless disregard for [the] decedent's safety and that of the general public, would likely result in harm to the general public, including the decedent." Count I further alleges that, as a direct and proximate result of the foregoing "willful and wanton refusal" of the County, through its agency, CENCOM, and its employee, Doe, the decedent drove her vehicle off the highway and was killed.

¶ 5     Count II of the complaint contains the same allegations as count I but is directed toward CENCOM, which the complaint alleges is a "public safety agency" as defined by section 2 of the Emergency Telephone System Act (50 ILCS 750/2 (West 2016)). Count III of the complaint is directed toward ETSB, which the complaint alleges had a duty to oversee and manage CENCOM in a reasonable manner. According to count III, ETSB acted in "reckless disregard and indifference for the safety of" the decedent and "willfully and wantonly" violated its duty when it failed to implement, oversee, and manage CENCOM's selection of employees, policies, and protocol in a reasonable manner. Count IV of the complaint mirrors counts I and II, but is directed toward Doe, the unnamed dispatcher. Count V of the complaint alleges a cause of action pursuant to the Survival Act (755 ILCS 5/27-6 (West 2016)) against the County.

¶ 6     On April 13, 2018, the defendants filed a combined motion to dismiss the complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)). As for its motion pursuant to section 2-615 of the Code (*id.* § 2-615), the defendants argued that the complaint contained insufficient and conclusory allegations of willful and wanton misconduct. Pursuant to section 2-619(a)(2) of the Code (*id.* § 2-619(a)(2)), the defendants argued that counts II and III of the complaint should be dismissed because neither CENCOM nor ETSB are separate legal entities from the County, and thus do not have the capacity to be sued.

3

¶ 7 The remainder of the defendants' motion to dismiss was brought pursuant to section 2-619(a)(9) of the Code and directed toward the entirety of the complaint. Therein, the defendants argued, *inter alia*, that they are immune from liability pursuant to section 4-102 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/4-102 (West 2016)). After full briefing in the circuit court, a hearing was held on the defendants' motion to dismiss on March 12, 2019. The circuit court took the motion under advisement, and on April 5, 2019, entered an order granting the motion. On May 2, 2019, the plaintiff filed a motion to reconsider, which the circuit court denied on June 19, 2019. Thereafter, the plaintiff filed a timely notice of appeal.

¶ 8                                    II. ANALYSIS

¶ 9 The circuit court granted the motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)), as well as section 2-619(a)(9) of the Code (*id.* § 2-619(a)(9)). Our standard of review is *de novo* under either section 2-615 or section 2-619 of the Code. *CNA International, Inc. v. Baer*, 2012 IL App (1st) 112174, ¶ 29. In addition, we may affirm the circuit court's dismissal on any proper basis found in the record. *Id.* ¶ 47. With these principles in mind, we begin with an analysis of that portion of the motion that was brought pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)), and specifically, the issue of the defendants' immunity from suit, because we conclude it is dispositive of this appeal.

> " 'The purpose of a section 2-619 motion is to dispose of issues of law and easily proved issues of fact early in the litigation. [Citation.] When ruling on a section 2-619 motion, the court must construe the pleadings and supporting documents in the light most favorable to the nonmoving party. [Citation.] The reviewing court must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or,

4

absent an issue of material fact, whether a dismissal was proper as a matter of law. [Citation.]' " *CNA International, Inc.*, 2012 IL App (1st) 112174, ¶ 31 (quoting *Zerjal v. Daech & Bauer Construction, Inc.*, 405 Ill. App. 3d 907, 910-11 (2010)).

¶ 10 Our analysis of the propriety of the circuit court's dismissal of the plaintiff's complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)) turns on the application of section 4-102 of the Tort Immunity Act (745 ILCS 10/4-102 (West 2016)) and section 15.1 of the Emergency Telephone System Act (50 ILCS 750/15.1 (West 2016)) to the facts as alleged in the plaintiff's complaint. The application of, and interplay between, these two statutory sections is crucial to determining the propriety of the dismissal of the plaintiff's complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)). This is because, while section 4-102 of the Tort Immunity Act (745 ILCS 10/4-102 (West 2016)) is a "blanket immunity" with no exception for "willful and wanton conduct" (*DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 515 (2006)), section 15.1(a) of the Emergency Telephone System Act provides that "[i]n no event" shall there be liability unless conduct "constitutes gross negligence, recklessness, or intentional misconduct." 50 ILCS 750/15.1(a) (West 2016). Thus, if section 4-102 of the Tort Immunity Act applies to the conduct alleged in the complaint, dismissal under section 2-619(a)(9) of the Code was proper. In contrast, if the standard for liability set forth in section 15.1 of the Emergency Telephone System Act applies, a question would remain as to whether the conduct alleged in the complaint "constitutes gross negligence, recklessness, or intentional misconduct."

¶ 11 Section 4-102 of the Tort Immunity Act provides:

"Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection

5

service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4-102 (West 2016).

¶ 12 The complaint alleges that the plaintiff called 9-1-1 on two occasions to request police assistance to intercept the decedent as she was driving under the influence of alcohol and had temporarily parked her car at two separate locations. Our supreme court in *DeSmet* held that section 4-102 of the Tort Immunity Act (745 ILCS 10/4-102 (West 2002)) is implicated where dispatch services are called upon to dispatch police in response to a request for such services and the police do not respond. *DeSmet*, 219 Ill. 2d at 513-14. The *DeSmet* court made clear that section 4-102 of the Tort Immunity Act is "comprehensive in the breadth of its reach, addressing situations where no police protection is provided to the general public and those in which inadequate protection is provided." *Id.* at 515.

¶ 13 Pursuant to our supreme court's holding in *DeSmet*, section 4-102 of the Tort Immunity Act (745 ILCS 10/4-102 (West 2016)) applies to immunize the defendants from liability under the facts as alleged in the complaint. The plaintiff argues, however, that section 15.1 of the Emergency Telephone System Act (50 ILCS 750/15.1 (West 2016)) should control because it applies specifically to the provision of 9-1-1 services. Our colleagues in the first district considered this issue in *Carolan v. City of Chicago*, 2018 IL App (1st) 170205, ¶ 27, holding that where a 9-1-1 call requests police intervention, it involves a police protection service for the purposes of section 4-102 of the Tort Immunity Act, "which is not supplanted by section 15.1 of the Emergency Telephone System Act." We recognize that the analysis in *Carolan* considered a prior version of section 15.1 of the Emergency Telephone System Act, which was amended effective January 1, 2016. However, for the following reasons, we too hold that the "blanket

6

immunity" found in section 4-102 of the Tort Immunity Act applies where a 9-1-1 call requests police intervention and liability is premised on the failure of a dispatcher to dispatch police in a timely fashion.

¶ 14    We begin with an examination of the Emergency Telephone System Act (50 ILCS 750/0.01 *et seq.* (West 2016)). The purpose of the statute is stated in section 1 as follows:

"It is the purpose of this Act to establish the number '9-1-1' as the primary emergency telephone number for use in this State and to encourage units of local government and combinations of such units to develop and improve emergency communication procedures and facilities in such a manner as to be able to quickly respond to any person calling the telephone number '9-1-1' seeking police, fire, medical, rescue, and other emergency services." *Id.* § 1.

¶ 15    The Emergency Telephone System Act directs that all agencies providing emergency services be within the jurisdiction of a 9-1-1 system and that by July 1, 2020, every 9-1-1 system in Illinois shall provide Next Generation 9-1-1 service.[2] *Id.* § 3(b). Section 6 of the statute requires that all systems be designed to meet the specific requirements of each community and public agency served by the system. *Id.* § 6. In addition, section 6 requires that every system have the capability to utilize the direct dispatch method, relay method, transfer method, or referral method in emergency calls. *Id.* Section 6.1 of the Emergency Telephone System Act requires the use of telecommunications technology for hearing-impaired and speech-impaired individuals. *Id.* § 6.1. Section 10 provides for the establishment of "uniform technical and operational standards for all 9-1-1 systems in Illinois." *Id.* § 10.

_____

[2]Next Generation 9-1-1 refers to an upgrade from an analog 9-1-1 system to a digital or Internet Protocol-based 911 system. *Next Generation 911*, 911.gov, https://www.911.gov/issue_nextgeneration911.html (last visited Dec. 2, 2020) [https://perma.cc/D4GC-4WB6].

7

¶ 16    Thus, an overview of the Emergency Telephone System Act reveals that its purpose is to govern the technical aspects of providing emergency services statewide via a 9-1-1 system. "The primary goal of statutory construction is to ascertain and give effect to the intent of the legislature." *In re Detention of Powell*, 217 Ill. 2d 123, 135 (2005). As such, it has been said that the purpose of section 15.1 of the Emergency Telephone System Act (50 ILCS 750/15.1 (West 2016)) "is to provide limited tort immunity for the agencies responsible for creating and running the emergency telephone system in Illinois." *Chiczewski v. Emergency Telephone System Board of Du Page County*, 295 Ill. App. 3d 605, 608 (1997). This interpretation is consistent with the language of 15.1, which focuses on the technical aspects of providing 9-1-1 services, as follows:

> "In no event shall a *** public safety answering point, emergency telephone system board, or unit of local government assuming the duties of an emergency telephone system board, *** or its officers, employees, assigns, or agents be liable for any civil damages *** that directly or indirectly results from, or is caused by, any act or omission in the development, design, installation, operation, maintenance, performance, or provision of 9-1-1 service required by this Act, unless the act or omission constitutes gross negligence, recklessness, or intentional misconduct." 50 ILCS 750/15.1(a) (West 2016).

¶ 17    Based on the foregoing, this court is not convinced that section 15.1 of the Emergency Telephone System Act was designed to apply to situations in which a plaintiff alleges that a dispatcher failed or refused to dispatch emergency services in response to a call via the 9-1-1 system. Rather, because the Emergency Telephone System Act is designed to ensure the infrastructure is in place to provide 9-1-1 services to all of Illinois, it is reasonable to interpret section 15.1 of the statute to provide an immunity for failures within that infrastructure and technology itself. However, assuming that the legislature intended that an immunity be provided

8

for misconduct on the part of dispatchers, we agree with the defendants that the provision was not designed to supersede the immunities set forth in the Tort Immunity Act. See 745 ILCS 10/1-101 *et seq.* (West 2016).

¶ 18    "A court must construe statutes relating to the same subject matter with reference to one another so as to give effect to the provisions of each, if reasonable." *Harris v. Thompson*, 2012 IL 112525, ¶ 25 (citing *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 391-92 (1998)). 9-1-1 dispatch services could potentially implicate or coincide with police activities as are addressed in article IV of the Tort Immunity Act (745 ILCS 10/4-101 *et seq.* (West 2016)), fire protection and rescue activities as are addressed in article V of the Tort Immunity Act (745 ILCS 10/5-101 *et seq.* (West 2016)), or medical, hospital, and public health activities as are addressed in article VI of the Tort Immunity Act (745 ILCS 10/6-101 *et seq.* (West 2016)). There are various provisions throughout each of these articles that provide an array of immunities ranging from "blanket immunities" to immunity absent willful and wanton conduct.

¶ 19    The legislature's use of "in no event" to precede the immunity set forth in section 15.1 when it changed the language to include "the provision of 9-1-1 service" indicates that it is designed to apply if no broader immunity is provided elsewhere in Illinois law. This is a reasonable interpretation of that section that gives effect to section 15.1, as well as to all the potentially implicated provisions of the Tort Immunity Act. See *Harris*, 2012 IL 112525, ¶ 25 (citing *Henrich*, 186 Ill. 2d at 391-92). Accordingly, we find that, assuming that section 15.1 of the Emergency Telephone System Act (50 ILCS 750/15.1 (West 2016)) is implicated in a case that is based on the conduct of 9-1-1 operators or dispatchers, it is intended to be a "catch-all" immunity provision to be applied if no section of the Tort Immunity Act applies to the conduct at issue. Based on the foregoing, section 4-102 of the Tort Immunity Act (745 ILCS 10/4-102

9

(West 2016)) applies to the conduct at issue and was properly applied by the circuit court to dismiss the plaintiff's complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)).

¶ 20                                III. CONCLUSION

¶ 21    For the foregoing reasons, we affirm the April 5, 2019, order of the circuit court of St. Clair County that dismissed the plaintiff's complaint.

¶ 22    Affirmed.

¶ 23    JUSTICE WHARTON, dissenting:

¶ 24    I disagree with the conclusion reached by the majority for two principle reasons. First, I believe the majority's interpretation of section 15.1 of the Emergency Telephone System Act overlooks express language in the statute, making its limited tort immunity applicable to the "performance[ ] or provision of 9-1-1 service." See 50 ILCS 750/15.1(a) (West 2016). Second, unlike the majority, I am reluctant to conclude, based on the pleadings, that the failure to dispatch that occurred in this case was not the result of a "failure within the infrastructure and technology" of the system itself. For these reasons, I respectfully dissent.

¶ 25    The best evidence of legislative intent is the express language of the statute itself. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421 (2002). If statutory language is clear and unambiguous, there is no need to look beyond that language and "resort to other tools of statutory construction." *Id.* at 421-22. Here, the express language of section 15.1 provides that its limited immunity applies to liability that results from "any act or omission in the development, design, installation, operation, maintenance, *performance, or provision of 9-1-1 service* required by [the Emergency Telephone System] Act." (Emphasis added.) 50 ILCS

10

750/15.1(a) (West 2016). Thus, by its express terms, the statute applies to the performance or provision of 9-1-1 services involved in this case.

¶ 26   Although we need not look beyond this clear and unambiguous statutory language, I believe that a consideration of the purpose and policy behind the Emergency Telephone System Act supports my conclusion that section 15.1 is applicable. As the majority points out, the stated purpose of the Emergency Telephone System Act is "to encourage units of local government *** to develop and improve emergency communication *procedures* and facilities in such a manner as to be able to quickly respond to any person calling the telephone number '9-1-1' seeking *** emergency services." (Emphasis added.) *Id.* § 1. To this end, section 6 mandates that all 9-1-1 systems "be designed to meet the specific requirements of each community and public agency served by the system." *Id.* § 6. To satisfy this requirement, a system must not only meet the technological standards set out in the Emergency Telephone System Act, it must also include procedures designed to ensure that necessary services are dispatched when and where they are needed. Indeed, section 6 contains a declaration of legislative purpose that explicitly states, "The General Assembly finds and declares that the most critical aspect of the design of any system is the procedure established for handling a telephone request for emergency services." *Id.*

¶ 27   I recognize that this does not end the inquiry. The plaintiff called 9-1-1 on October 22, 2017, to request police services. The Tort Immunity Act provides blanket immunity from liability "for failure to provide adequate police protection or service." 745 ILCS 10/4-102 (West 2016). As the majority explains, the Illinois Supreme Court found that this blanket immunity provision applied in a case involving a telephone call requesting police assistance for an apparent motor vehicle accident. See *DeSmet*, 219 Ill. 2d at 515. This court is obliged to follow the

11

holdings of the Illinois Supreme Court. *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 836 (2004). However, I do not believe *DeSmet* is controlling for two reasons.

¶ 28 First and foremost, the *DeSmet* court did not address the issue before us in this case. There, a motorist used her cell phone to report that she saw another vehicle run off the road and into a ditch. *DeSmet*, 219 Ill. 2d at 500-01. I note that the opinion does not specify whether the motorist dialed 9-1-1. See *id.* (stating only that she spoke to the clerk of the Village of Orion). In any event, no one responded to the scene, and the driver of the other vehicle was found deceased three days later. *Id.* at 502. The administrator of the decedent's estate filed a lawsuit naming numerous public officials and entities as defendants. *Id.* at 502-03. The trial court granted the defendants' motions to dismiss the complaint, finding the blanket immunity provision in section 4-102 of the tort immunity act to be applicable. *Id.* at 503.

¶ 29 On appeal to the supreme court, the plaintiff argued that section 4-102 did not apply in cases where a municipality "sends no assistance whatsoever in response to a request for help at an accident scene." *Id.* at 504. She argued that this " 'complete absences of *any* police service' " was not the same thing as a " 'failure to provide *adequate* police service.' " (Emphases in original.) *Id.* at 512. The supreme court rejected this argument—an argument focused on the language of section 4-102 itself—by explaining that section 4-102 "is comprehensive in the breadth of its reach, addressing situations where no police protection is provided *** and those in which inadequate protection is provided." *Id.* at 515.

¶ 30 The plaintiff in *DeSmet* also argued that the motorist's call for assistance did not necessarily trigger a police search; rather, the call was a request "to send rescue personnel, whose misconduct is not shielded by section 4-102." *Id.* at 504-05. The supreme court rejected this argument too, explaining that "an emergency medical response was not indicated" unless

12

and until police determined that there was an accident requiring emergency medical services. *Id.* at 512. The question was whether section 4-102 applied, "rather than some other statutory provision of the Tort Immunity Act," presumably one governing immunity for emergency medical personnel. *Id.* Thus, the *DeSmet* court never considered whether section 15.1 of the Emergency Telephone System Act applied.

¶ 31    The second reason I do not believe *DeSmet* is controlling is that the court expressly recognized that the blanket immunity of section 4-102 might not apply in cases where other legislative enactments identify "a specially protected class of individuals to whom statutorily mandated duties are owed." *Id.* at 521. The Emergency Telephone System Act mandates several duties to the citizens living within a geographic area served by a 9-1-1 system. It is an alleged failure to perform these statutorily mandated duties that is at issue in this case.

¶ 32    I am also not convinced that the First District's decision in *Carolan* requires us to reach the result reached by the majority. I reach this conclusion for three reasons.

¶ 33    First, the *Carolan* court construed an earlier version of section 15.1. See *Carolan*, 2018 IL App (1st) 170205, ¶ 20. Although the version of the statute in effect when the events in that case occurred applied to liability arising from " 'operating or implementing any plan or system' " mandated by the Emergency Telephone System Act (see *id.* (quoting 50 ILCS 750/15.1 (West 2008))), it did not contain language making it applicable to the "performance[ ] or provision of 9-1-1 service," as the amended version applicable to this case does (see 50 ILCS 750/15.1(a) (West 2016); Pub. Act 99-6, § 2-10 (eff. Jan. 1, 2016) (amending 50 ILCS 750/15.1)). In finding the earlier version to be inapplicable, the *Carolan* court emphasized that the preamendment statutory language "did not expressly contemplate the provision of emergency services."

13

*Carolan*, 2018 IL App (1st) 170205, ¶ 21. That is not true of the amended version of the statute, which was in effect when the events at issue in this case took place.

¶ 34    Second, *Carolan* is factually distinguishable from the case before us, although I acknowledge that this distinction does not appear to have played a role in the First District's analysis. There, the delay in dispatching police to the scene of a robbery in progress appeared to have been the result of not having enough units available to respond, rather than a failure on the part of the 9-1-1 system or its dispatchers. See *id.* ¶ 7.

¶ 35    Third, this court is not obliged to follow the holdings of other districts of the Illinois Appellate Court. *Schramer v. Tiger Athletic Ass'n of Aurora*, 351 Ill. App. 3d 1016, 1020 (2004). I therefore believe that neither *DeSmet* nor *Carolan* require us to depart from the unambiguous statutory language making section 15.1's limited immunity provision applicable to the provision and performance of 9-1-1 service mandated by the Emergency Telephone System Act.

¶ 36    Moreover, I would find that dismissal was inappropriate in this case, even if I were to agree with the majority that the Emergency Telephone System Act governs only to "the technical aspects of providing 9-1-1 services" and that section 15.1 therefore applies only to cases involving "failures within that technology and infrastructure itself." I emphasize that when ruling on a motion to dismiss, a court must consider the pleadings and any supporting documentation in the light most favorable to the nonmoving party. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. Applying this standard, I believe it would be premature to determine at the pleading stage that the failure to dispatch police in this case resulted from "misconduct on the part of the dispatchers" and not from a failure within the infrastructure of the system itself.

¶ 37    In his complaint, the plaintiff alleged that Mascoutah police were dispatched to a Handi-Mart instead of an All-Mart. It is reasonable to assume that a 9-1-1 operator who is unfamiliar

with the geographic area is more likely than a local operator to confuse similarly named establishments and to send police or other emergency responders to the wrong location as a result. It is also reasonable to assume that the legislature took this possibility into account when mandating that 9-1-1 systems "be designed to meet the specific requirements of each community" served. See 50 ILCS 750/6 (West 2016). Operators and dispatchers are the essential human nexus between distressed callers and the emergency assistance they are requesting. In order to effectively meet the individual needs of the communities served, a 9-1-1 system must provide these call-takers with immediate access to the information necessary to dispatch services to the correct location even if they are not familiar with the area. This may include technology that allows them to look up precise locations quickly or to relay calls to the appropriate authority automatically.

¶ 38     It is worth noting that, on appeal, the plaintiff also alleges that the 9-1-1 operator refused to dispatch police to the Sax's Speedi-Check in response to his second call unless he provided an exact street address for that establishment. While I recognize that the plaintiff cannot rely on this allegation to survive the defendants' motion to dismiss because he did not include it in his complaint, I believe dismissal was inappropriate for the reasons I have already discussed. I mention this new allegation only because it provides an even more dramatic illustration of the problem this case presents. Clearly, a 9-1-1 system cannot meet the needs of the communities it serves if its operators must rely on distressed callers to provide them with exact street addresses.

¶ 39     Finally, I believe that the errors that led to the lack of response that occurred in this case would have been highly improbable in a locally-based small town emergency response system rather than the 9-1-1 system legislatively mandated by the Emergency Telephone System Act, a system that was intended to provide greater protection for the citizenry. The majority's

15

interpretation of the relevant statutes leads to a result in which the plaintiff has no possible means of legal redress. I recognize that when a statute clearly and unambiguously leads to an unjust result, "the appeal must be to the General Assembly," and not to the courts. See *DeSmet*, 219 Ill. 2d at 510. Here, however, I do not believe the unjust result is required by a clear and unambiguous statute. For these reasons, I would reverse the trial court's order dismissing the plaintiff's case.

**No. 5-19-0256**

| | |
|---|---|
| **Cite as:** | *Schultz v. St. Clair County*, 2020 IL App (5th) 190256 |
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 18-L-61; the Hon. Heinz M. Rudolf, Judge, presiding. |
| **Attorneys for Appellant:** | Rhonda D. Fiss, of Law Office of Rhonda D. Fiss, P.C., of Belleville, for appellant. |
| **Attorneys for Appellee:** | K. Andrew Hoerner, of Becker, Hoerner & Ysursa, P.C., of Belleville, for appellees. |